DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ALEXANDRA J. SHEPARD (CABN 205143)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6767
    FAX: (415) 436-7234
    Alexandra.Shepard2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00600 WHA |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| MICHAEL SHIFERAW, | |
| Defendant. | |

The United States submits the following sentencing memorandum in this case.

## I. FACTUAL BACKGROUND

*First Robbery: Citibank (November 2018)*

On November 23, 2018, Michael Shiferaw entered a Citibank in the Marina District of San Francisco, showed the teller a demand note which purportedly threatened a weapon, and demanded cash. The teller was his sister, Meron Shiferaw. Meron Shiferaw placed an unusually large quantity of cash, $21,100, directly into a white plastic bag carried by Mr. Shiferaw. Mr. Shiferaw then fled the Citibank with the money.

During the incident, Mr. Shiferaw wore distinctive clothing and did not wear any facial disguise. As a result, Citibank's security cameras were able to capture and record Mr. Shiferaw's outfit, facial hair, and a portion of the side of his face. On the day of the robbery, approximately 3.5 hours prior to the incident, security camera footage retrieved from Mr. Shiferaw's apartment complex captured him departing the apartment complex wearing the identical outfit – including distinctive shoes, jeans, a camouflage pattern hooded sweatshirt, and hat – worn during the bank robbery. Furthermore, less than an hour after the robbery, the same security camera captured Mr. Shiferaw returning to the apartment complex wearing the same distinctive shoes and pants, and carrying the white plastic bag used during the robbery. Apart from the identical items of clothing, the robber's race, age, sex, general height, facial hair, hair, and build appear identical to that of Mr. Shiferaw. Cell phone location records further implicated him in the robbery.

The search of Mr. Shiferaw's apartment revealed a number of items. Agents found at least some of the clothing items Mr. Shiferaw wore during the robbery. In the bedroom shared by Michael Shiferaw and his girlfriend, Dilan Yagmur, they found a bag that contained an empty magazine for a .40 caliber handgun, as well as .40 caliber ammunition and .556 caliber ammunition. Outside Mr. Shiferaw's bedroom window, agents also found two baggies containing cocaine and ketamine—one stuck in the grates of the fire escape and one on the ground below the window.

Mr. Shiferaw's phone was unlocked and showed calls between him and Meron Shiferaw on the day of the robbery, including one shortly before it occurred. Further, a forensic review of Mr.

Shiferaw's phone revealed a video, made the morning of the robbery, wherein Mr. Shiferaw filmed himself wearing the outfit he wore to rob the bank, angling the camera from a high position seemingly to simulate how he would appear to a bank security camera.

Mr. Shiferaw was charged with bank robbery and arrested, along with his sister. Following a detention hearing, Mr. Shiferaw was released to a halfway house. Among the conditions of Mr. Shiferaw's pretrial release was the standard condition that he not commit another violation of federal, state or local law.

*Second Robbery:  Bank of America (March 2019)*

Nevertheless, while on pretrial release from the Citibank robbery, Mr. Shiferaw robbed another bank—a Bank of America branch at 5500 Geary Boulevard in San Francisco, on March 20, 2019. Mr. Shiferaw entered the bank, approached a teller, and orally demanded cash. Mr. Shiferaw then moved to a second teller, demanded more cash, told her not to give him "any of the fake stuff," and then told her that he had a gun. Ultimate, the two tellers gave Mr. Shiferaw over $4000.

Mr. Shiferaw appeared to take steps to avoid making the mistakes which led to his detection via cell phone location data and surveillance footage after the first robbery. A week before the second robbery he cut his distinctive hair and beard. In the hour before the robbery, he took pains to be seen multiple times on the surveillance camera of his apartment building wearing different clothing than the robber. Mr. Shiferaw's apartment building is less than a mile from the location of the second bank robbery. During the robbery itself, bank surveillance video showed Mr. Shiferaw with a cell phone to his ear; a teller at the bank advised that she believed the robber was only pretending to use the phone. Mr. Shiferaw also wore a hat and sunglasses to disguise himself.

Despite the efforts to conceal himself, still images extracted from the bank's high resolution video showed that the robber bore a strong resemblance to Michael Shiferaw. The description of the robber was consistent with Mr. Shiferaw, and Mr. Shiferaw was also positively identified from photos as the robber by an employee at the halfway house at which he lived.

The night of the robbery, defendant returned to the halfway house and tested positive for alcohol, in violation of another one of the conditions of his pretrial release.

2

UNITED STATES' SENTENCING MEMORANDUM
CR 18-00600 WHA

## II. PRESENTENCE REPORT

The government reviewed the Presentence Report prepared by United States Probation Officer Jill Polish Spitalieri. The government initially advised Probation that it had no objections to the draft Presentence Report, including Probation's recommendation that the Mr. Shiferaw receive no reduction for acceptance of responsibility. However, as discussed further below, the government has reconsidered its position on acceptance of responsibility and now believes that the three-level reduction is warranted. The government otherwise has no unresolved objections to the PSR, other than to the Sentencing Guidelines calculation to the extent that it does not reflect a three-level reduction for acceptance of responsibility.

## III. SENTENCING RECOMMENDATION

*Sentencing Guidelines Calculation*

The government believes that the Sentencing Guidelines calculation is as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. §2B3.1(a): | 20 |
| Specific offense characteristic: Property of a financial institution taken (U.S.S.G. §2B3.1(b)(1)) | +2 |
| Specific offense characteristic: Threat of death (U.S.S.G. §2B3.1(b)(2)(F)) | +2 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1: | - 3 |
| **Adjusted Offense Level:** | **21** |

The Defendant's Criminal History Category is I. The Sentencing Guidelines range for an offense level of 21 is therefore 37-46 months.

*Recommended Sentence*

The government ultimately agrees with Probation's recommended sentence of 42 months imprisonment. The recommended sentence is below the bottom of the Sentencing Guidelines range calculated by Probation, but in the middle of the Guidelines ranges calculated by the government. A 42-month sentence reflects the seriousness of defendant's offenses, provides just punishment, and will promote respect for the law and afford adequate deterrence.

1    The nature and circumstances of the two bank robberies here justify the recommended sentence.
2  Mr. Shiferaw stole an unusually large amount of money, over $21,000, in the first robbery.  He was able
3  to do that because of the inside assistance of the bank teller—his sister.  That money has not been
4  recovered.
5    In addition, as this Court knows, Mr. Shiferaw brazenly robbery a second bank *while on pretrial*
6  *release* from robbing the first bank.  This fact speaks for itself.  Further, Mr. Shiferaw's explanation for
7  why he robbed the second bank is not credible.  His excuse was that he learned about the death of a
8  childhood friend, "which caused him to relapse and commit the second robbery."  PRS ¶ 59.  Grief can
9  take various forms, but it strains credulity to think that one of those forms is robbing a bank.  Moreover,
10  Mr. Shiferaw's actions that day suggest methodical planning, not unhinged grief.  PSR ¶¶ 16-17.
11  Finally, Mr. Shiferaw has a history of arrests for robbery and burglary, so the second robbery here is a
12  simply part of a pattern, not an aberration.  *See* PSR ¶¶ 47, 48, 50.
13    *Acceptance of Responsibility*
14    Nevertheless, the government believes that the three-level reduction for acceptance of
15  responsibility is still warranted.  Mr. Shiferaw agreed to plead guilty several months before trial, and
16  prior to the filing of any motions in this case, saving the parties and the Court the time and resources
17  required for trial.  Mr. Shiferaw also appeared to show contrition for his role in the robberies, most
18  particularly for involving his sister.
19    Mr. Shiferaw's culpability for the second robbery is also already reflected in his Sentencing
20  Guidelines range, which increased substantially following the second robbery.  *See* PSR ¶¶ 23-28.
21  Because it would amount to double-counting, that same crime should not also be used as the basis for
22  denying a three-level downward adjustment for acceptance of responsibility.
23    *Specific Offense Characteristic:  Threat of Death*
24    Probation recommends, and the government agrees, that Mr. Shiferaw should receive a two-level
25  upward adjustment for threatening a teller in the second robbery with a gun.  Shortly after the second
26  robbery, one of the tellers gave a statement to the FBI describing Mr. Shiferaw's threat:
27  ///
28

4
UNITED STATES' SENTENCING MEMORANDUM
CR 18-00600 WHA

> Once [teller K.K.] had provided the robber with money, the robber moved to [teller D.M.'s] window.  The robber said something like, "and you too."  After K.K. had started to give the robber money, D.M. started to get scared.  D.M. then took money from her cash drawer.  While she was making the money neat, the robber said to her "don't give me any of the fake stuff."  D.M. responded that she did not have any of the fake stuff.  The robber responded "ok, cause I have a gun."

This interaction is summarized at Paragraph 15 in the PSR and Paragraph 4 in the PSR Addendum.  Mr. Shiferaw objects to this statement because, he claims, neither of the other two tellers heard it.  However, a threat like this is hardly out of character for Mr. Shiferaw:  he was previously arrested for a robbery in which he held a knife to the victim's throat, arrested for assault after stabbing a victim, and in connection with prior arrests he was also found with a concealed replica firearm and a BB gun.  *See* PSR ¶¶ 47-50, and Sentencing Recommendation, at p. 1.

      The Ninth Circuit has held in a virtually identical case that the threat, "I have a gun" warrants the threat-of-death enhancement.  *See U.S. v. Jennings*, 439 F.3d 604 (9th Cir. 2006).  The facts in *Jennings* are remarkably similar to the facts here.  The defendant approached a teller and told her, "Put all of your money on top of the counter.  I have a gun.  Just do it now."  The defendant told the teller's manager to order the teller to put the money on the counter.  He then took the money and fled the bank.  *Id*. at 604.  In *Jennings*, the Ninth Circuit adopted a "reasonable teller" standard for determining whether the enhancement should apply when a robber threatens a gun but does not threaten to use it, counseling courts to consider "how a reasonable teller, as the victim of the robbery, would view the statement," and to examine the context in which the statement was made.  *Id*. at 611.  Even in light of this standard, the Ninth Circuit concluded, "in most, but not all, circumstances, statements such as "I have a gun" are sufficient to instill a fear of death in a reasonable victim and warrant the §2B3.1(b)(2)(F) enhancement."  *Id*.  They provided an example of a circumstance in which the enhancement was not appropriate:  when a bank robber claimed to have a gun, but showed what was clearly a toy.  *Id*.

      There are no such mitigating circumstances here.  The evidence therefore supports a two-level upward adjustment for the threat of death.

*///*

*///*

5

UNITED STATES' SENTENCING MEMORANDUM
CR 18-00600 WHA

## IV. CONCLUSION

Given the nature and circumstances of the offense, and Mr. Shiferaw's history of similar types of crimes, any sentence of imprisonment in this case should be high enough to deter Mr. Shiferaw from future, similar conduct. Forty-two months is sufficient, but not greater than necessary,to achieve this deterrent effect. For the reasons set forth above, therefore, the government recommends that the Court impose a sentence of forty-two months in prison, three years of supervised release, a $200 mandatory special assessment, and restitution of $25,202.

DATED: November 26, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　DAVID L. ANDERSON
　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　 /s/ *Alexandra Shepard*
　　　　　　　　　　　　　　　　　　　　　ALEXANDRA J. SHEPARD
　　　　　　　　　　　　　　　　　　　　　Special Assistant United States Attorney